UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAFAEL FERNANDEZ : | |
| : | PRISONER CASE NO.: |
| v. : | 3:09-cv-1339 (JCH) |
| : | |
| THERESA LANTZ : | APRIL 26, 2010 |

**RULING RE: PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)**

Petitioner Rafael Fernandez, an inmate confined at the Cheshire Correctional Institution in Cheshire, Connecticut, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). See Pet. for Writ of Habeas Corpus ("Pet.")(Doc. No. 1) He challenges his conviction for murder and arson on the ground that his conviction violated his Sixth and Fourteenth Amendment rights. For the reasons that follow, the Petition is denied.

**I.    BACKGROUND**

Fernandez was charged with felony murder, murder, burglary, arson and tampering with physical evidence.[1] State v. Fernandez, 254 Conn. 637, 640 (2000). Fernandez retained Attorney William Gerace. On May 15, 1996, Attorney Gerace informed the court that there was a "mutually agreed upon" motion pending before the court. Attorney Gerace stated that he had filed an "oblique" motion to withdraw as counsel because he did not want to prejudice Fernandez' case by making the subject of the motion pubic. Attorney Gerace indicated that he would return the "substantial retainer" paid by Fernandez. The state did not object to the motion. Attorney Gerace

---

[1] The evidence indicated that Fernandez stabbed the victim multiple times and then set fire to the apartment, located in a forty-seven unit building. See State v. Fernandez, No. CR95478387, 2004 WL 3090580 (Conn. Super. Ct. Nov. 23, 2004).

spoke with the judge in chambers, and the court agreed that Attorney Gerace should withdraw.  The court granted the motion to withdraw on the record and informed Fernandez that he would be afforded time to retain new counsel.  The court also stated that the time granted to find a new lawyer would not count in the calculation of whether Fernandez was afforded his right to a speedy trial and explained the concept of excludable time.  Fernandez agreed to a two-week continuance to retain new counsel.  Id. at 640-41

Two weeks later, Fernandez informed the court that he was considering self-representation.  The court appointed a public defender to act as counsel or standby counsel and advise Fernandez of the dangers of self-representation.  On June 24, 1996, with Assistant Public Defender Michael Isko present at the court's request to serve as standby counsel, Fernandez informed the court that he was considering hiring another lawyer.  The court continued the matter for another two weeks to enable Fernandez to resolve the issue.  Id. at 641-42.

On July 10, 1996, with Attorney Isko as standby counsel, Fernandez formally requested to represent himself.  The court thoroughly canvassed Fernandez and warned him of the dangers of self-representation.  The court found that Fernandez had intelligently and voluntarily waived his right to assistance of counsel and granted Fernandez' request.  Id. at 642-43 & n.9.

Between July 1996 and February 1997, Fernandez filed many *pro se* motions, including a motion seeking access to a law library.  The court granted the motion subject to the availability of such accommodations within the Department of Correction.  The Department of Correction moved to vacate the order.  The then Commissioner of

Correction testified that no correctional facility had a formal law library, although some facilities had more law books than others. He stated that the most extensive collection was located at Osborn Correctional Institution, but as an inmate being held under high security, Fernandez was not a candidate for transfer to Osborn, a medium security facility. He also argued that Fernandez' right of access to the courts was satisfied by appointment of standby counsel. In response, Fernandez acknowledged the risks of proceeding pro se, and explained that he could afford to retain counsel, but did not want either retained counsel or full-time assistance by a public defender. Id. at 643-44. The court took the motion under advisement and vacated the order in February 1997.

In January 1997, the court appointed Attorney Isko to represent Fernandez. The following month, however, Fernandez returned to court seeking to represent himself. The court reviewed the essential components of the prior canvass and permitted Fernandez to represent himself. Attorney Isko again became standby counsel. After several pretrial motions were denied, Attorney Isko again was appointed counsel. Id. at 644-45.

In March 1997, Attorney Isko sought a continuance in light of his recent appointment as counsel and the technical nature of the evidence. The court ordered that co-counsel be provided to assist Attorney Isko for the trial. On the day trial was scheduled to begin, before a jury was empaneled, the court declared a mistrial because a change in trial strategy implicated the state's attorney as a possible witness for the defense. Id. at 645.

Nothing further happened in the case until April 1998, when Fernandez again expressed his wish to proceed pro se. He sought to waive his right to a jury trial and

3

requested trial before a three-judge panel.  The court canvassed Fernandez and determined that he possessed the intelligence and capacity to appreciate the consequences of self-representation and that he voluntarily waived his right to trial by jury.  Attorney Isko again was appointed standby counsel.  Id. at 646.

Trial commenced May 18, 1998.  During the trial, Fernandez conferred with Attorney Isko several times, and Attorney Isko lodged objections and spoke on Fernandez' behalf.   Fernandez cross-examined the state's witnesses but presented no other defense.  See Resp.'s Opp. to Pet. for Writ of Habeas Corpus ("Resp.'s Opp.") at 17 (Doc. No. 10).  On May 29, 1998, the panel unanimously found Fernandez guilty of murder and arson, and not guilty of felony murder, burglary and tampering with the evidence.  Fernandez was sentenced to a total effective term of imprisonment of fifty-five years.   See 254 Conn. at 646.

Fernandez, represented by counsel, challenged his conviction on direct appeal on two grounds.  He argues that the state court denied his constitutional right to counsel when it granted Attorney Gerace's motion to withdraw and that the court improperly vacated the order that he be provided access to a law library.  The conviction was affirmed on direct appeal.  Id. at 639-40.

On February 10, 1999, Fernandez filed a petition for writ of habeas corpus in state court.  The amended petition contained the same two grounds raised on direct appeal.  On November 26, 2002, the court granted the respondent's motion to dismiss the petition as barred by res judicata.  The dismissal was upheld on appeal.  See Fernandez v. Commissioner of Correction, 86 Conn. App. 42, 43-44 (2004).  Fernandez did not seek certification from the Connecticut Supreme Court.

On April 1, 2005, Fernandez filed a second state habeas action. The amended petition alleged that trial counsel Gerace was ineffective in the manner in which he withdrew his representation and that the first habeas counsel was ineffective in failing to assert the ineffective assistance of counsel claim. The petition was denied after a hearing. See Fernandez v. Warden, No. TRSCV045000391S, 2007 WL 1976160 (Conn. Super. Ct. May 29, 2007). The denial was upheld on appeal. See Fernandez v. Commissioner of Correction, 291 Conn. 830, 837 (2009).

## II.     STANDARD OF REVIEW

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed

to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Boyette v, Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001)(noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

### III.  DISCUSSION

Fernandez argues that his conviction violates his Sixth and Fourteenth

Amendment rights.  See Pet. at 6.  In support of his claim, Fernandez states that the state court granted a pre-trial oral motion allowing Fernandez' attorney to withdraw without requiring him to file a written motion and without addressing Fernandez on the question of withdrawal until after the motion had been granted.  See id.  Fernandez also states that the state court granted him access to a law library while he was representing himself, but later vacated the order.  See id. at 15.

The respondent has construed the Petition to assert the two issues raised on direct appeal: the granting of the motion for counsel to withdraw thereby depriving Fernandez of his counsel of choice and the denial of access to a law library, and the issue raised in Fernandez' second state habeas petition, that counsel was ineffective in withdrawing.  See Resp.'s Opp. at 1-2.  The court considers these three claims below.

      A.      Denial of Access to a Law Library

Fernandez argues that he was denied his constitutional right of access to the courts when the trial court vacated its order that he be transferred to a correctional facility with a law library.  See Pet. at 15.

Criminal defendants have a right to self-representation.  See Faretta v. California, 422 U.S. 806, 836 (1975).  Although the federal appellate courts are split on whether this right to self-representation implies a right of access to a law library, the Supreme Court has not resolved that question.  See Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005).  Thus, Fernandez has no clear constitutional right to a law library.

The Supreme Court has held, however, that inmates have a constitutional right of access to the courts.  Bounds v. Smith, 430 U.S. 817, 821 (1977).  The states can satisfy their obligation "to assist inmates in the preparation and filing of meaningful legal

papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828 (emphasis added).  The right of access to the courts does not necessarily encompass a right to a law library.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  A legal service plan, such as the assistance of the Office of the Public Defender, is an acceptable alternative to provision of law libraries.  Bounds, 430 U.S. at 830-31.

The Connecticut Supreme Court applied the holdings of Bounds and Lewis in evaluating Fernandez' claim that he was denied access to the courts because he was not afforded access to a law library.  See Fernandez, 254 Conn. at 653-54.  Therefore, the decision is not contrary to Supreme Court precedent.  See Lurie v. Wittner, 228 F.3d 113, 127 (2d Cir. 2000), cert. denied, 532 U.S. 943 (2001) (ruling is contrary to established federal law when state court applies law contradicting Supreme Court precedent).  This court considers below whether the Connecticut Supreme Court reasonably applied this law to the facts.

The Connecticut Supreme Court explained that the constitutional obligation was to provide access to a law library or assistance from a person trained in the law, but not both.  See Fernandez, 254 Conn. at 654.  That Court noted that Fernandez was represented or had standby counsel at all times with the exception of a two week period immediately following the trial court's granting of Attorney Gerace's motion to withdraw, during which time Fernandez was deciding whether to retain another attorney.  While serving as standby counsel, Attorney Isko was available to answer Fernandez' legal questions and offer legal advice if Fernandez so requested.  See id. at 655.  The Connecticut Supreme Court held that the availability of assistance from standby

counsel afforded Fernandez access to the courts and satisfied the constitutional requirement. See id. at 658; see also U.S. v. Cooper, 375 F.3d 1041, 1052 (10th Cir. 2004) (holding that "[w]hen a prisoner voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding, he is not entitled to access to a law library or other legal materials"); U.S. ex rel. George v. Lane, 718 F.2d 226, 231 (7th Cir. 1983) ("[T]he offer of court-appointed counsel to represent a defendant satisfies the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments."); Spates v. Manson, 644 F.2d 80, 85 (2d Cir. 1981) (right to self-representation "does not carry with it a right to state-financed library resources where state-financed legal assistance is available").

This court concludes that the decision of the Connecticut Supreme Court, that appointment of standby counsel satisfied the obligation to provide meaningful access to the courts, is a reasonable application of federal law. Thus, the Petition is denied on this claim.

### B.    Denial of Assistance of Counsel of Choice

Fernandez next argues that the trial court violated his Sixth Amendment right to counsel of choice when it permitted Attorney Gerace to withdraw representation without requiring him to file a written motion as required under state procedural law and without clearly identifying good cause to support the decision. See Pet. at 6.

The Sixth Amendment right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." U.S. v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). This right is violated if a criminal defendant is erroneously deprived of his counsel of choice. Id. at 146. The right to counsel of

choice is qualified, not absolute, however.  For example, a criminal defendant cannot insist on representation by an attorney who is not a member of the bar, who has a previous relationship with an opposing party, whose fee he cannot afford, or who declines to represent him for other reasons.  See Wheat v. U.S., 486 U.S. 153, 159 (1988).

In its analysis of this claim, the Connecticut Supreme Court relied on the standard set forth in Wheat, that the right to counsel of choice is not absolute.  Therefore, the decision is not contrary to Supreme Court precedent.  See Lurie, 228 F.3d at 127.  This court next considers whether the Connecticut Supreme Court reasonably applied this law to the facts.

The Connecticut Supreme Court considered several facts in evaluating this claim.  First, that Court noted that Fernandez did not object when the trial court granted Attorney Gerace's motion to withdraw.  See Fernandez, 254 Conn. at 649.  Based on the fact that Fernandez filed approximately forty motions while representing himself, the Court concluded that Fernandez could have made his objections known.  See id.  In addition, Fernandez' brother was present in the courtroom to receive the returned retainer.  The Court deduced from his brother's presence, that Fernandez likely was aware that Attorney Gerace was going to move to withdraw representation.  See id. at 650.  At no time prior to the conclusion of trial did Fernandez inform the trial court that Attorney Gerace was his attorney of choice or challenge the withdrawal.

Second, the Court noted that Fernandez could have used the returned retainer to obtain new counsel during the two week continuance.  See id.  In addition, Fernandez told the trial court in October 1996 that he could afford to retain counsel, but

did not choose to do so. See id. Thus, Fernandez was not prevented from retaining counsel for financial reasons.

Third, after the initial two-week continuance, Public Defender Isko served as counsel or standby counsel at all time through the trial, which was held over two years after the court granted the motion to withdraw. See id. at 648.

Finally, even if Attorney Gerace were Fernandez' counsel of choice, this preference must be balanced against other considerations, such as "the need to preserve the highest ethical standards of professional responsibility." U.S. v. Cunningham, 672 F.2d 1064, 1070 (2d Cir. 1982). In its articulation of the decision to grant the motion to withdraw, the trial court indicated that the reason for the withdrawal "'was of an incriminating nature that would have prevented [Gerace] from effectively representing the defendant in the future and might have placed him in jeopardy of violating ... [professional] [e]thics.'" Fernandez, 254 Conn. at 651. In light of the possible ethical violation, the Connecticut Supreme Court concluded that withdrawal of counsel was warranted. See id.

The Connecticut Supreme Court evaluated the facts surrounding the withdrawal of counsel and concluded that Fernandez failed to establish the violation of a constitutional right. See id. at 652. The withdrawal was initiated by counsel; it was not precipitated by any action of the state. The motion was made long before trial, at a time when Fernandez had a fair and reasonable opportunity to retain competent replacement counsel, and was required by ethical considerations. This court concludes that the Connecticut Supreme Court reasonably applied Supreme Court law in concluding that Fernandez was not denied a constitutional right to counsel of choice.

C.     Ineffective Assistance of Counsel

Finally, Fernandez contends that Attorney Gerace was ineffective because he withdrew representation.  See Pet. at 6.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail, Fernandez must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him.  Id. at 687-88.  Counsel is presumed to be competent.  Fernandez bears the burden of demonstrating unconstitutional representation.  U.S. v. Cronic, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the Strickland test, Fernandez must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  Strickland, 466 U.S. at 694.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  Rompilla v. Beard, 545 U.S. 374, 381 (2005).  To prevail, Fernandez must demonstrate both deficient performance and sufficient prejudice.  Strickland, 466 U.S. at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing this claim, the Connecticut Supreme Court applied the standard established in Strickland.  See Fernandez, 291 Conn. at 836-37.  Because the state court applied the correct legal standard, the state court's decision is not contrary to federal law.  Accordingly, this court will consider whether the Connecticut Supreme

Court reasonably applied that law to the facts.

The Connecticut Supreme Court first rejected Fernandez' argument that he need not demonstrate prejudice to prevail on his claim. See id. at 834. The Court cited federal law distinguishing a claim of ineffective assistance of counsel from a claim of denial of counsel of choice. See id. at 835. Unlike the right to counsel of choice, the right to effective assistance of counsel is derived from the Sixth Amendment's purpose of ensuring a fair trial. Thus, a violation of the right to effective assistance of counsel is not complete unless the petitioner can show that he was prejudiced by counsel's actions. See Gonzalez-Lopez, 548 U.S. at 146-48; see also Wheat, 486 U.S. at 159 ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

The Connecticut Supreme Court viewed the ineffective assistance of counsel claim in Fernandez' habeas action as an attempt to relitigate the denial of counsel of choice claim raised on direct appeal. See Fernandez, 291 Conn. at 837. The Connecticut Supreme Court held that Fernandez cannot circumvent the prior decision by recharacterizing Attorney Gerace's withdrawal as "'deficient performance'" instead of "'abuse of judicial discretion.'" See id.

In addition, the Connecticut Supreme Court affirmed the habeas court's determination that Fernandez failed to show that he had been prejudiced by Attorney Gerace's actions. See id. The only evidence of deficient performance presented to the habeas court was the failure to file a written motion to withdraw as required by the Connecticut Practice Book. Fernandez v. Warden, No. TRSCV045000391S, 2007 WL

13

1976160, at *19 (Conn. Super. Ct. May 29, 2007).

The Strickland requires representation be effective, not perfect.  In evaluating the effectiveness of counsel's performance, the court must eliminate "the distorting effects of hindsight, ... reconstruct the circumstances of counsel's challenged conduct, and ... evaluate the conduct from counsel's perspective at the time."  466 U.S. at 689.  The habeas court and the Connecticut Supreme Court on direct appeal concluded that Fernandez had notice of Attorney Gerace's intent to withdraw and an opportunity to be heard regarding any objections.  In addition, both courts found that Attorney Gerace was required to withdraw to avoid ethical violations.  Thus, it was not clear to the state courts that Fernandez had satisfied the deficient performance prong of the Strickland standard.  254 Conn. at 649-50; 2004 WL 1976160 at *19.

Further, the habeas court noted that Fernandez failed to present any evidence demonstrating prejudice as a result of the failure to file a written motion.  He made no showing that the failure to file a written motion undermined the confidence in the results of his trial.  2004 WL 1976160 at *19.  Thus, Fernandez also failed to demonstrate resulting prejudice.  Id.

This court concludes that the state courts' analysis of the ineffective assistance of counsel claim was a reasonable application of federal law.  Thus, the Petition must be denied on this claim.

## IV.     CONCLUSION

The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.  The Clerk is directed to enter judgment in favor of the respondent and close this case.

The court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right.  Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

**SO ORDERED.**

Dated this 26th day of April 2010, at Bridgeport, Connecticut.

    /s/ Janet C. Hall
Janet C. Hall
United States District Judge